**Frankie TATUM, Appellant,**

v.

**Sheriff Jake HOUSER, Individually and Collectively, in his Official Capacity, Appellee.**

**No. 79–2045.**

United States Court of Appeals, Eighth Circuit.

Submitted March 2, 1981.

Decided March 6, 1981.

John M. Beaton, Kennett, Mo., for appellant.

Wendell W. Crow, Ford, Ford, Crow & Reynolds, Kennett, Mo., for appellee.

Before LAY, Chief Judge, and HEANEY and ARNOLD, Circuit Judges.

PER CURIAM.

Frankie Tatum was detained in the Pemiscott County Jail in Caruthersville, Missouri, from December 2 through December 20, 1977, while awaiting trial on a charge of first degree murder. After transfer from that jail, he commenced a civil rights action against the Sheriff of Pemiscott County, Jake Houser, in the United States District Court for the Eastern District of Missouri. In a trial before the court, he alleged violations of his Fifth and Fourteenth Amendment rights as a result of his confinement in a maximum security cell and other conditions of confinement. He prayed for $250,000 in money damages and injunctive relief.

The district court ruled that Tatum was not entitled to recover because (1) the Sheriff did not have actual knowledge of Tatum's complaints; (2) Tatum failed to establish that he was actually damaged as a result of his confinement; and (3) the evidence did not support the claim that his constitutional rights had been violated. *Tatum v. Houser*, 480 F.Supp. 683 (E.D.Mo. 1980). Although the court below erred in resting its decision on the first two grounds, we cannot say the trial judge's credibility finding was clearly erroneous and, therefore, affirm the judgment of the district court on the third ground.

In Missouri, the state of the law is such that "[t]he sheriff of each county in this state shall have the custody, rule, keeping and charge of the jail within his county, and all of the prisoners in such jail, and may appoint a jailer under him, *for whose conduct he shall be responsible.*" Mo.Stat. Ann. § 221.030 (Vernon). This statute, in our view, makes the Sheriff liable for jail conditions even though he may not have had actual knowledge of them. *Dimarzo v. Cahill*, 575 F.2d 15, 17–18 & n.3 (1st Cir.), *cert. denied sub nom. Hall v. Dimarzo*, 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978); *Campise v. Hamilton*, 382 F.Supp. 172, 177 & n.5 (S.D.Tex.1974), *appeal dismissed*, 541 F.2d 279 (5th Cir. 1976), *cert. denied*, 429 U.S. 1102, 97 S.Ct. 1127, 51 L.Ed.2d 552 (1977). Accordingly, the district court erred in ruling that the Sheriff was not responsible for the conditions existing in his own jail.

Moreover, the district court's ruling that Tatum could not recover because he had failed to show actual damages as a

result of his treatment in the Pemiscott County Jail is also erroneous. In *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court ruled that deprivations of certain constitutional rights, even without a showing of actual injury, may be vindicated, at a minimum, by making such actionable for nominal damages. *Id.* at 266, 98 S.Ct. at 1053.

Finally, the district court's factual finding that the plaintiff failed to prove that his constitutional rights had been violated is not clearly erroneous. The plaintiff presented evidence tending to show that he was confined in a thirty-five-square-foot cell and not permitted to exercise on a daily basis; that he was not permitted to take showers; and that he was required to obtain drinking water from the toilet in his cell. That evidence was characterized by the district court, however, as unbelievable. After a thorough review of the entire file, we concur in the district court's credibility findings. The findings of the lower court are not clearly erroneous. *See Bowers v. Kraft Foods Corp.*, 606 F.2d 816, 818 (8th Cir. 1979); *Marshall v. Kirkland*, 602 F.2d 1282, 1291 (8th Cir. 1979).[1] Had the district court found the evidence presented by the plaintiff to be credible, a different end result on the merits of this case might well have been required. *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Campbell v. Cauthron*, 623 F.2d 503 (8th Cir. 1980).

The judgment of the district court is affirmed.

---

1. When the determination of a specific issue rests most heavily upon the credibility of the witnesses that appear before the district court judge, the scope of our review is confined by the admonition in Fed.R.Civ.P. 52 that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." *Id.; see Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969).

The district court specifically found that the testimony of the plaintiff and his two witnesses was not credible. The court stated: "The Court observed the plaintiff and his two witnesses. All of them are convicted felons and in the opinion of this Court their testimony is not believable. Their testimony is contradictory." *Tatum v. Houser*, 480 F.Supp. 683, 686 (E.D. Mo.1979). While we accept the trial court's specific finding that the testimony of the plaintiff and his witnesses was not believable, we feel it necessary to comment on the imprecision of the language used by the court in its Rule 52 findings.

It is true that Fed.R.Evid. 609 permits a witness's credibility to be attacked through the admission of evidence establishing that the witness has been convicted of a crime. Rule 609(a)(2) automatically permits the admission of convictions having great probative value on the issue of veracity. Rule 609(a)(1) conditions the admission of convictions of lesser probative value upon a balancing of its probative value against its prejudicial effect to the defendant. J. Weinstein, Evidence ' 609[03a]. The fact that a witness has been convicted of a crime, however, is not, without more, conclusive on the issue of credibility. If that were the rule, then a prisoner could seldom succeed in a § 1983 "prison conditions" case; his burden of proof would be raised to the level of impossibility.